ORIGINAL

# United States District Court

**RECEIVED
U.S. DIST. COURT
BRUNSWICK DIV**

SOUTHERN DISTRICT OF GEORGIA

**FILED
U.S. DIST. COURT
BRUNSWICK DIV.**

Application under Section 706(f)
of Civil Rights Act of 1964

**'00 OCT 23 PM 3 34**

· 2000 OCT 25 A 11: 35

CLERK _D Chisholm_
SO. DIST. OF GA.

Declaring that the information I have given below is true and correct, I apply to this court for:

(  ) appointment of an attorney

(✓) authority to commence an action without prepayment of fees, costs, or security.

## I. Personal and Financial Data.

**CV 200-158**

_10-23-00_
**NUNC PRO TUNC DATE**

A.   Your full name and present mailing address:

_Angela C. Favors_

_126 Drew Circle_

_Brunswick, Ga 31525_

Telephone (if any). _912-264-6861_

B.   Are you presently employed? Yes_____   No ✓

If the answer is "yes", give the name and address of your employer and the amount of your usual weekly salary or wages

Weekly Earnings:   $ _N/A_

If you are not presently employed, give the name and address of your last employer, when you last worked, and the amount of weekly salary or wages you were receiving.

_United States Dept of Treasury - Federal Law Enforcement Training Center
Budget & Finance Division & Lawrence H Summers, Sec of the Treasury_

Date last worked: _Nov 16, 1998_

Weekly earnings. $ _572.00_

C.   Approximately how much money have you received in the past twelve months:

—as wages, salary, commissions, or earned income of any kind? . . . . . . . . . . . . . . . . . . . .   $ _N/A_

—as interest, dividends, rents, or investment income of any kind? . . . . . . . . . . . . . . . . .   $ _N/A_

—as gifts or inheritance?   . . . . . . . . . . . . . . . . . . . . . . .   $ _N/A_

—from social security, unemployment compensation, or any form of state or federal welfare
payments or benefits? .   . . . . . . . . . . . . . . . . . . . . .   $ _970.00_

—from pensions, annuities, workmen's compensation, disability or other insurance policies?   . . . $ _N/A_

—from all other sources? . . . . . . . . . . . . . . . . . . . .   $ _3650.00_

D.   How much money do you own or have in any checking or savings account? . . . . . . . . .   $ _N/A_   1

E.  Do you own any real estate, stocks, bonds, notes, automobiles, boats, or other valuable property (excluding ordinary household items and clothing)? .................................... ...Yes ✓ No_____

If the answer is "yes", describe the property and state its approximate value:

_Real Estate, State of Georgia, DeKalb County_
_Value: $60,000.00. My Father is the Co owner and assists with payment_
_of the Mortage._

F.  How much money do you owe to others? ............................................ $ 53,726.35

As to each debt of over $100, state the name of the creditor and the approximate amount owed:

_First Union Mortage - $27,000 in State of Georgia_
_Visa Gold Credit Card - 650.00_
_Mr David Dowdy 6000.00 State of Georgia_

G.  List the persons who are dependent upon you for support, stating your relationship to them and how much you contribute each year toward their support.

_N/A_

H.  Are there any other persons regularly residing in your household who are over the age of 18 and who are presently employed? ................................ ...Yes_____ No ✓

If the answer is "yes", give the following information for each such person:

Name _____
Relationship _____
Employer _____
Weekly earnings $ _____

Name _____
Relationship _____
Employer _____
Weekly earnings $ _____

I.  Any other information which you believe supports your claim that you cannot financially afford to employ an attorney or to make payment of court fees, costs or security.

_I am unemployed, I have additional unpaid debts that include._
_NCO FINANCIAL $14,283.60, Bally $1,983.28, us Govt $3,809.47_
_in addition to unpaid Medical Bills._

## II. Nature of Alleged Discrimination.

A.  Describe in your own words the employment practices about which you are complaining, identifying the persons, firms, companies, unions, agencies or bodies you say you have engaged in such practices.

_Discrimination, harassment and hostile working environment based on:_
_race black, sex, female and disabilities - Wrist injury and_

(attach additional sheets as needed)

physical and emotional stress. I am employed
by the Federal Law Enforcement Training Center
by the Treasury Dept. Lawrence H. Summers is
the Secretary of the Treasury.

B. Have you filed with the Equal Employment Opportunity Commission (EEOC) **a Charge** relating to such practices? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Yes ✓ No____

If "yes", *attach* a copy of each such Charge.

C. Have you received from the EEOC a letter notifying you of your right-to-sue **respecting** such Charges? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Yes ✓ No____

If "yes", *attach* a copy of such letter and notice, and state when you received the same.

Date Received: July 28, 2000

D. Have you received from the EEOC a copy of its Determination with regard to your Charges? . . . . . . . . . Yes ✓ No____

If "yes", *attach* a copy of such Determination. Also, if you disagree with any of the EEOC's findings or conclusions, state why.

TD Case Numbers 98-1423 & 99-1103
letter from Office of Equal Opportunity Program dated July 24, 2000 and
Received July 28, 2000.

TD Case Number 00-1008M - See also attached letter
advising of right to sue anytime after expiration of
120 days without decision

E. Any other information you desire to disclose which supports your claim of discriminatory employment practices.

## III. Efforts to Obtain Attorney

*(To be completed if requesting appointment of an attorney)*

A. Have you talked with an attorney about handling your claim? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Yes ✓ No____

If "yes", give the following information about *each* attorney with whom you **talked:**

Attorney: R. Joseph Hollili
When: Approximately from 1997 until August 2000

(attach additional sheets as needed)

Where: 512 G Street, Brunswick, GA

How (by telephone, in person, etc.) In Person and by telephone

Why attorney was not employed to handle your claim:

Unable to handle private cases beginning January 2001

Attorney: Martha F. Dekle

When: July 1999 and October 2000

Where: 8060 G Street, Brunswick, Ga

How (by telephone, in person, etc.) In Person

Why attorney was not employed to handle your claim:

Unable to determine Merits of case in time required to file suit. First Contact was before EEO Process completed, and no contact was made again until October 2000.

B.   Explain any other efforts you have made to contact an attorney to handle your claim.

Eugene Highsmith

October 2000

Mr. Highsmith was too busy.

C   Any other information which supports your application for the court to appoint an attorney for you:

D.   Name and address of each attorney who has represented you in the last 10 years for any purpose:

N/A

(attach additional sheets as needed)

## IV. Attestation and Signature

Under penalty of perjury I declare that the information given on the preceding _____ pages is true and correct.

Dated: 20 Oct 2000

Angela C. Favors

Signature

WITNESSES



**DEPARTMENT OF THE TREASURY**

WASHINGTON, D.C. 20220

JUL 2 4 2000

**Certified Mail**
**Return Receipt Requested**

Complaints of: **Angela C. Favors and Lawrence H. Summers,**
**Secretary of the Treasury**

TD Nos:        **98-1403, 99-1103**

Dear Ms. Favors:

This letter transmits the Department of the Treasury's final agency decision on the subject complaints. A thorough analysis of the record, which is incorporated in the decision, shows that the evidence is not sufficient to support your claims of race, sex and disability discrimination and harassment. Therefore, a finding of no discrimination has been rendered.

If you are dissatisfied with this decision, you may file an appeal according to the instructions that follow the decision.

Sincerely,

Marcia H. Coates
Director
Office of Equal Opportunity Program

Angela C. Favors
126 Drew Circle
Brunswick, GA 31525

Enclosures

cc:    EEO Officer FLETC

       Washington Regional Complaint Center

FINAL AGENCY DECISION IN THE    ANGELA C. FAVORS AND
DISCRIMINATION COMPLAINTS OF:   LAWRENCE H. SUMMERS,
                                SECRETARY OF THE TREASURY

CASE NUMBERS:                   TD 98-1403 and 99-1103

## INTRODUCTION

This is the Departmental decision in the discrimination complaints filed by
Angela C. Favors against the Federal Law Enforcement Training Center
(FLETC).  Complainant alleges that she was discriminated against and harassed
because of her race (Black) and disabilities (wrist injury and stress) and sex
(female).

## PROCEDURAL BACKGROUND

### 98-1403

| | |
|---|---|
| Dates of Alleged Discriminatory Incidents: | August 1996 through August 1998 |
| Date of Initial Counselor Contact: | May 13, 1998 |
| Date Notice of Right to File Issued: | August 11, 1998 |
| Date Complaint Accepted: | August 26, 1998 |
| Dates of Investigation: | March 3-11, 1999 |
| Date Investigative File and Election Rights Issued: | August 24, 1999 |
| Date Final Agency Decision Requested: | August 28, 1999 |
| Authority for Decision: | Title 29 C.F.R. §1614.110 |

### 99-1103

| | |
|---|---|
| Date of Alleged Discriminatory Incident: | November 10, 1998 |
| Date of Initial Counselor Contact: | November 17, 1998 |
| Date Notice of Right to File Issued: | December 24, 1998 |
| Date Complaint Accepted: | January 5, 1999 |
| Dates of Investigation: | March 3-11, 1999 |
| Date Investigative File and Election Rights Issued: | June 25, 1999 |
| Date Final Agency Decision Requested: | July 23, 1999 |
| Authority for Decision: | Title 29 C.F.R. §1614.110 |

## ISSUES

### 98-1403[1]

(1) Whether Complainant was subjected to ongoing harassment because of her

---

[1] We note that the Washington Regional Complaint Center originally accepted five separate issues,
including one issue with 10 parts.  We have revised the statement of the issues for greater clarity.

race (Black) and/or disabilities (physical: wrist injury and mental: stress) between August 1996 and August 1998.

(2) Whether Complainant was subjected to harassment because of her disability (physical: wrist injury) when, on March 27, 1998, management allegedly recorded false information on Form CA-2, Notice of Occupational Disease and Claim for Compensation.

(3) Whether Complainant was denied reasonable accommodation for her disabilities (physical: wrist injury and mental: stress) when management allegedly denied her request to limit her assignment of duties.

(4) Whether Complainant was discriminated against based on her race (Black) when she was not selected for the position of Accounting Technician advertised on July 26, 1996, under Vacancy Announcement (VA) 96-84, and when additional selections were made from the Voluntary Applicant File for the same position on March 3, 1998.

### 99-1103

Whether management discriminated against Complainant based on her race (Black), sex (female), and disabilities (mental: stress and physical: wrist injury) when, on November 10, 1998, Complainant's request for six months of administrative leave was denied.

## STATEMENT OF FACTS

At the time these complaints arose, Complainant was an Accounting Technician, GS-525-7, with the Federal Law Enforcement Training Center's Budget and Finance Division (IF Vol. 1 Ex. 2, p. 2-2).

During the period April 13, 1996 through November 20, 1997, Complainant collected monies on occasion when the cashiers were not available (IF Vol. 1 Ex. 3, p. 3-2, 3-3). Complainant alleges that management required her to perform cashier duties without the proper items to effectively perform the job (IF Vol. 1 Ex. 2, p. 2-4). Complainant's supervisor says that Complainant was not a cashier, but that she sometimes collected monies if the regular cashiers were not available. The supervisor states that any monies collected were to be turned over to the responsible cashier later that same day. She says management provided Complainant with a lock box and a receipt book for any monies she collected during this time period. The supervisor says that on November 13, 1997, Complainant sent her an E-mail message stating her concerns about collecting monies. The supervisor notified Complainant on November 14, 1997, that she would no longer be responsible for handling cash (IF Vol. 1 Ex. 3, p. 3-2, 3-3).

Complainant alleges that, during the period of August 1996 through April 1998, management counseled her for having a high rate of invoice errors (IF Vol. 1 Ex. 2, p. 2-3). Complainant's supervisor denies counseling Complainant for a high rate of invoice errors. She says that during staff meetings she asked all employees to be careful when entering data into the computer. The supervisor states that during the period referred to by Complainant it was noted on Complainant's performance appraisal that Complainant met the performance element by entering most invoices in a timely and accurate manner (IF Vol. 1 Ex. 3, p. 3-2).

Complainant also alleges that management made false accusations about her with regard to making personal telephone calls, taking leave without reporting it and having continuous visitors in the work area (IF Vol. 1 Ex. 2, p. 2-4). Management states that all employees were advised during staff meetings to limit personal telephone calls and to let their supervisor know if they leave the building for an extended period of time. Complainant was not singled out at these meetings or counseled individually on these matters (IF Vol. 1 Ex. 3, p. 3-2).

Complainant claims that she was denied the opportunity to work compensatory time and overtime during the period January through April 1998 (IF Vol. 1 Ex. 2, p. 2-4). Complainant's supervisor refutes Complainant's assertion that she was denied the opportunity to work compensatory time or overtime. She says that any employee who states they are behind in their work has an opportunity to work compensatory time or overtime (IF Vol. 1 Ex. 3, p. 3-2). An employee who acted in Complainant's supervisor's absence says that when he informed Complainant that overtime was available on Saturday, complainant replied that she did not work on Saturday (IF Vol. 2 Ex. 6, p. 6-3).

Complainant alleges that she was not provided with reasonable accommodation for her disabilities because management denied her request to limit her assignment of duties (IF Vol. 1 Ex. 2, p. 2-6). Complainant's supervisor says that Complainant never made her aware that she needed any accommodations due to any physical (wrist injury) and mental (stress) disabilities during the time period at issue. The supervisor states that at no time during any meetings or conversations that Complainant had with her did she tell the supervisor that she was having difficulty in performing duties because of Complainant's preexisting wrist injury, nor did Complainant make the supervisor aware that Complainant needed any special accommodations. On April 30, 1998, Complainant stated to her supervisor there was nothing management could do to accommodate her situation (IF Vol. 1 Ex. 3, p. 3-4).

On March 26, 1998, Complainant submitted a Notice of Occupational Disease and Claim for Compensation form (CA-2) to her supervisor concerning her right wrist injury. Complainant claims that management intentionally included false information on the form when her manager stated that management was

3

unaware of any health problems that Complainant may have experienced in performing her job duties, and denied witnessing any physical limitations that the employee might have experienced. Complainant's supervisor explains that on March 27, 1998, when she completed the form, Complainant had not told the supervisor that she was having difficulty performing duties because of Complainant's preexisting wrist injury (IF Ex. 2, p. 2-2; Ex. 3, p. 3-1).

In a May 12, 1998 memorandum prepared by the EEO Officer (EEOO), the EEOO confirmed that she met with Complainant in June 1997 to discuss Complainant's injury. At that meeting, Complainant informed the EEOO that she was not experiencing any work-related difficulties due to the injury. The EEOO stated in her May 12 memo that, after Complainant contacted her regarding her supervisor's notation on the CA-2 form, she personally discussed the matter with Complainant's supervisor. The EEO Officer notes that the supervisor stated that, when she filled out the form, she did not mean "management" in a broad sense, but rather that she personally could not recall having personal knowledge of Complainant's injury (IF, Ex. 2, p. 2-2, 2-40 - 2-42; Ex. 3, p. 3-1, 3-165).

According to Complainant, it was during a conversation on March 30, 1998 that she became aware that she had been discriminated against because of her race when she was not selected for the position of Accounting Technician advertised on July 26, 1996, under Vacancy Announcement (VA) 96-84. Complainant also became aware on the same date that she was not selected for the same position when additional selections were made from the Voluntary Applicant File on March 3, 1998. In both cases two non-Black applicants were selected (IF Vol. 1 Ex. 1, p. 1-45).

The selecting official for VA 96-84 states that applicants were selected based on their applications, education, past performance appraisals, training and personal interviews. He says the most qualified applicants were selected for the vacancies (IF Vol. 1 Ex. 5, p. 5-1). The other management official who, together with the selecting official, comprised the selection panel corroborates the selecting official's remarks (IF Vol. 1 Ex. 4, p. 4-1).

In 1998, management utilized the Voluntary Applicant File (VAF) to fill two vacancies because FLETC's Personnel Office had a backlog of requests for job postings. Two Accounting Technician vacancies were filled from the VAF. One was a permanent position and the other was a term position. Complainant, who was one of the applicants considered from the VAF, had indicated that she would not accept a term position. Complainant's supervisor was the selecting official for the VAF selections. She indicates that Complainant was not selected for the permanent Accounting Technician vacancy because she was not the most qualified candidate. She states that all candidates were rated based on a series of interview questions asked by a three member interview panel. The interview questions reflected knowledge, skills, abilities, work experience and other factors. The candidates were given a score based on their education, awards and

4

performance appraisals as reported in their applications. The supervisor says that she relied on the highest score for all factors considered in the selection process (IF Vol. 1 Ex. 3, p. 3-4). The supervisor's comments are corroborated by a member of the interview panel. The panel member says that he scored the two selectees higher than Complainant on the interview questions (IF Vol. 2 Ex. 6, p. 6-2).

Complainant alleges that, on April 14, 1998, during a staff meeting that took place after her duty hours, the White Accounting Technicians were apprised of standard operating procedures and rules, and copies of those rules were handed out to those in attendance. Complainant alleges that management then counseled her for not following the rules and standard operating procedures despite the fact that she was not present at the meeting (IF Vol. 1 Ex. 2, p. 2-5). An acting supervisor says that the office has a basic set of procedures and that things are changed when necessary to handle individual situations. Routine meetings are held to discuss the procedures and Complainant was a part of the discussion process even though she was not present at the April 14 meeting (IF Vol. 1 Ex. 1, p. 1-17).

In April and May 1998 Complainant received physical therapy for her wrist injury at the FLETC facility. Complainant asserts that she was required to present daily documentation of her arrival and departure times for the therapy (IF Vol. 1 Ex. 2, p. 2-4). Complainant's supervisor states that employees using FLETC's facilities for physical therapy are provided a form to give their supervisor attesting to the treatment received. In accordance with these procedures, an acting supervisor requested that Complainant provide the form stating that treatment was provided (IF Vol. 1 Ex. 3, p. 3-2).

Complainant was absent from work for three consecutive days from May 4 through May 6, 1998, and management requested Complainant to furnish a doctor's statement for the three day absence (IF Vol. 1 Ex. 3, p. 3-3). Complainant alleges that beginning May 4, 1998, she was requested to provide a medical statement whenever she requested one or more days of sick leave (IF Vol. 1 Ex. 2, p. 2-5). Complainant's supervisor says that Complainant was never required to furnish a doctor's statement for absences of one or two days, but was required to provide medical certification for her absence of three consecutive days. The supervisor says that the AFGE Union Agreement provides that the supervisor may require a doctor's statement from the employee under these circumstances. She states that a White, non-disabled employee was also required to furnish medical documentation for her absence (IF Vol. 1 Ex. 3, p. 3-3; Vol.3 Ex. 25, p. 25-2, 25-3).

Complainant alleges that she did not receive a Commendably Outstanding Performance (COP) award on June 17, 1998, while two non-Black employees without disabilities who performed the same or similar duties did receive COP awards (IF Vol. 1 Ex. 2, p. 2-5). Complainant's supervisor says that Complainant

did not receive a COP award because she did not process payment vouchers. The two employees received the awards for helping new employees process timely payments to vendors while performing their regularly assigned duties. Complainant received a COP award on August 24, 1998 (IF Vol. 1 Ex. 3, p. 3-3).

Complainant alleges that in July 1998, she was accused of not performing back-up duties as Accounting Technician and assisting with mail duties (IF Vol. 1, p. 2-5). Complainant's supervisor says that Complainant was not accused of not performing backup duties as an accounting technician or assisting in opening the mail. She says Complainant was asked on July 10, 1998, to please help with the mail as other employees were helping with this task (IF Vol. 1, p. 3-3).

On August 4, 1998, Complainant received a performance appraisal for the period July 1,1997 through June 30,1998, that she claims did not reflect the duties she performed (IF Vol. 1 Ex. 2, p. 2-5). The supervisor says that Complainant's performance appraisal for the period July 1,1997 through June 30,1998, reflects that Complainant's performance elements were met and fully successful. The supervisor states that Complainant was rated fairly in accordance with the performance standards (IF Vol. 1 Ex. 3, p. 3-3).

On November 10, 1998, management denied Complainant's request for six months of administrative leave (IF Vol. 2, Ex. 2, p. 2-57, 2-58). Complainant alleges that administrative leave was approved for two White, male employees for a period of one year (IIF Vol. 2, Ex. 2, p. 2-2, 2-3). Complainant's supervisor states that a FLETC directive specifies the circumstances in which a manager may grant administrative leave, and therefore she had no authority to grant Complainant's request. She notes that she did grant Complainant's requests for advanced sick and annual leave on November 17, 1998 and February 25, 1999 (IF Ex. 3, p. 3-1).

Complainant went on extended leave beginning on November 16, 1998, and did not return to work. On May 19, 1999, management proposed her removal on the basis of her unavailability for duty (IF Vol. 2, Ex. 2, p. 2-65).[2]

## APPLICABLE LAW

### Disparate Treatment

This case involves an allegation of disparate treatment, that is, that the agency treated the Complainant less favorably than others because of the Complainant's membership in a protected group. International Brotherhood of Teamsters v. United States, 431 U.S. 324 (1977). The Supreme Court developed a standard of analysis in the case of McDonnell Douglas v. Green, 411 U.S. 792 (1973), which is applied in making determinations regarding alleged discriminatory

---

[2] The record does not indicate whether Complainant was in fact removed from her position with the agency

treatment in disparate treatment cases.  Under the McDonnell Douglas standard, the Complainant has the initial burden of establishing that there is some substance to his/her allegation of discrimination.  In order to accomplish this burden, the Complainant must establish, by a preponderance of the evidence, a prima facie case--that is, a body of evidence such that, were it not contradicted, the inference may be made that there was discrimination.  A preponderance of the evidence is that degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue.  5 CFR §1201.56(c)(2).  The establishment of a prima facie case is not sufficient in and of itself to support a finding of discrimination; rather, it simply allows an inference of discrimination.

Once a prima facie case has been established, management has the burden of dispelling the inference from the prima facie case by articulating legitimate, nondiscriminatory reasons for its actions.  Furnco Construction Corp. v. Waters, 438 U.S. 567 (1978).  To rebut the prima facie case, the agency must provide an explanation sufficient that, if not later shown to be pretextual, the inference raised by the prima facie case would fall.  In addition, the reasons must be sufficiently clear and specific that the Complainant will have a fair opportunity to demonstrate pretext.  This is not a burden of persuasion, which at all times remains with the Complainant, but rather a burden of production--to "clearly set forth, through the introduction of admissible evidence, the reasons for [its employment decision]." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254-256 (1981).

Once management has articulated legitimate, nondiscriminatory reasons for its actions, the Complainant has the burden to prove, by a preponderance of the evidence, that the reasons given by management for its actions were not the true reasons but a pretext for discrimination.  The Complainant can establish pretext either directly by showing a discriminatory reason more likely motivated management, or indirectly, by showing that the reasons given for management's actions are simply not believable. Burdine, 450 U.S. at 253.  Generally, the Complainant may show pretext, among other ways, either by presenting direct evidence of discriminatory statements or the past personal treatment of the Complainant, or by using comparative data, such as statistics of management's employment practices or evidence that management departed from its normal policy.  At that point, the trier of fact must decide which party's explanation of the employer's motivation it believes. U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983).  "But a reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742 (1993).

The standard for establishing a prima facie case is not a rigid one, and must vary depending on the circumstances in each case. McDonnell Douglas, 411 U.S. at 802 n.13.  To establish a prima facie case of race and sex discrimination, the

Complainant must show that: (1) the Complainant is a member of a protected group and (2) the Complainant was treated differently by management than others similarly situated who were not of the Complainant's protected group. See Rupp v. Dep't of Health and Human Services, EEOC Appeal No. 01871171 (1988); Missonellie v. Defense Logistics Agency, EEOC Appeal No. 01851826 (1987). If there are no similarly situated individuals, Complainant must show: (1) the Complainant is a member of a protected group; (2) the Complainant was the object of an adverse employment action; and, (3) there was a causal relationship between membership in the protected class and the adverse action(s) suffered. See Leftwich v. United States Steel Corp., 470 F. Supp. 758, 764 (W.D. Pa. 1979).

For a case alleging non-selection, Complainant must show: (1) the Complainant is a member of a protected group; (2) the Complainant applied for a position for which he/she was qualified; (3) the Complainant was not selected for the position; and, (4) after the Complainant's rejection, the job remained open and the agency continued to seek applications from persons of the Complainant's qualifications from outside Complainant's protected group, or someone from outside the Complainant's protected group was selected. McDonnell Douglas, 411 U.S. at 802; Lucero v. Martin, EEOC Appeal No. 01911170 (1991).

The burden of proof in a case under the Rehabilitation Act is patterned after that required under Title VII law, as set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973); Guinn v. Bolger, 598 F. Supp. 196, 200 (D.D.C. 1984); Butler v. Dep't of the Navy, 595 F. Supp. 1063, 1065 (D. Md. 1984). Under this standard, the Complainant must demonstrate a prima facie case of discrimination on the basis of disability. Guinn, 598 F. Supp. at 200.

If the Complainant succeeds, the burden of proof shifts to the agency to demonstrate a legitimate, nondiscriminatory reason for the employment decision, McDonnell Douglas, 411 U.S. at 802, including a showing that reasonable accommodation would impose undue hardship on agency operations. Prewitt v. United States Postal Serv., 662 F.2d 292, 306 (5th Cir. 1981).

If management articulates a legitimate reason, the burden shifts back to the Complainant to show that the alleged nondiscriminatory reason was, in fact, a pretext for disability discrimination. McDonnell Douglas, 411 U.S. at 804; Guinn, 598 F. Supp. at 202.

To establish a prima facie case of disability discrimination, the Complainant must demonstrate that: (1) the Complainant was "disabled" within the meaning of the Rehabilitation Act; (2) the Complainant was a "qualified disabled person;" and (3) the Complainant was treated differently than individuals not within the Complainant's protected group or that the agency failed to make a needed reasonable accommodation, resulting in adverse treatment of the Complainant. Sonn v. Dep't of Transportation, EEOC Nos. 01890868 & 01890869 (1989).

Under applicable EEOC regulations, a "disabled person" is defined as one who: (1) has a physical or mental impairment which substantially limits one or more of the person's major life activities; (2) has a record of such impairment; or (3) is regarded as having such impairment. 29 CFR §1614.203(a)(1). The EEOC regulations define a "qualified disabled person" as an individual who, with respect to employment, is a disabled person and who, with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others and who, depending upon the type of appointing authority being used: (1) meets the experience and/or education requirements (which may include passing a written test) of the position in question; or (2) meets the criteria for appointment under one of the special appointing authorities for disabled persons. 29 CFR §1614.203(a)(6).

**Hostile Work Environment Harassment**

An employer has an affirmative duty to maintain a working  environment free of harassment.  It is well established that harassment based on any prohibited basis is a violation of Title VII.  See EEOC v. Murphy Motor Freight Lines, 488 F. Supp. 381 (D. Minn. 1980) (racial harassment).  The Equal Employment Opportunity Commission defines harassment as "verbal or physical conduct . . . [that] (1) has the purpose or effect of creating an intimidating, hostile, or offensive working environment; (2) has the purpose or effect of unreasonably interfering with an individual's work performance; or (3) otherwise adversely affects an individual's employment opportunities." 29 CFR §1606.8(b)(1).

The normal order of proof and procedures enunciated by the Supreme Court for Title VII disparate treatment cases is not readily adaptable to developing proofs and defenses in Title VII actions based on a hostile working environment.  It is well settled that in harassment cases the Complainant must show that: (1) the Complainant was subject to verbal or physical conduct relating to membership in a protected group; and (2) such conduct has the purpose or effect of creating an intimidating, hostile, or offensive working environment, or otherwise unreasonably interfering with an individual's work performance or adversely affecting an individual's employment opportunities.  To create a hostile environment sufficient to violate Title VII, the harassment must be so severe or pervasive so as to alter the conditions of the victim's employment and create an abusive work environment.  Unless the conduct is very severe, a single or several isolated incidents of offensive conduct or remarks generally will not create a hostile work environment.  Hicks v. Gates Rubber Co., 833 F.2d 1406 (10th Cir. 1987).

Once a prima facie case is established, the question centers on whether the employer is responsible under the legal doctrine of respondeat superior for the harassment which took place.  An employer will be held liable for actionable

discrimination caused by a supervisor, subject to an affirmative defense looking to the reasonableness of the employer's conduct as well as that of the victim. The affirmative defense has two necessary elements: (1) that the employer exercised reasonable care to prevent and correct promptly any harassing behavior, and (2) that the employee plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. However, there is no affirmative defense available when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion or an undesirable reassignment. EEOC Enforcement Guidance: Vicarious Employer Liability for Unlawful Harassment by Supervisors (June 18, 1999), Faragher v. Boca Raton, 524 U.S. 775 (1998), Burlington Industries v. Ellerth, 524 U.S. 742, (1998).

An employer is liable for one employee's harassment of another worker if the employer had actual or constructive knowledge of the existence of a hostile working environment and took no prompt and adequate remedial action. Katz v. Dole, 709 F.2d 251, 255 (4th Cir. 1983).

## PARTIAL PROCEDURAL DISMISSAL OF TD 98-1403 ISSUE 4

Section 1614.107(b) of the Equal Employment Opportunity Commission (EEOC) regulations provides that the agency shall dismiss a complaint or a portion of a complaint that fails to comply with the applicable time limits contained in §1614.105. Complainant was aware on September 26, 1996, that she had not been selected for the position vacancies advertised under vacancy announcement 96-84 (IF Vol. 1, Ex. 1, p. 1-3). However, Complainant's first contact with an EEO counselor regarding the 1996 nonselections was on May 13, 1998 (Id. p. 1-9).

The Commission has adopted a "reasonable suspicion" standard (as opposed to a "supportive facts" standard) to determine when the forty-five-day limitation period was triggered under 29 C.F.R. §1614.105(a)(1). See Ball v. U.S. Postal Service, EEOC Request No. 05880247 (July 6, 1998). The Commission has ruled that the limitation period is triggered as of the time when a Complainant should have reasonably suspected discrimination, not when she becomes aware of all the facts that might support a charge of discrimination. See, e.g., Collins v. U.S. Postal Service, EEOC No. 01962639 (December 5, 1996). Complainant offers no explanation why she did not have a reasonable suspicion prior to 1998 that her 1996 nonselection was discriminatory, especially since Complainant was aware in 1996 of the identities and race of the 1996 selectees. Therefore, the portion of **ISSUE 4** concerning the 1996 nonselections is dismissed in accordance with §1614.105.

## FINDINGS AND ANALYSIS

<u>98-1403</u>

**(1)  Whether Complainant was subjected to ongoing harassment because of her race (Black) and/or disabilities (physical: wrist injury and mental: stress) between August 1996 and August 1998.**

Complainant alleges that she was subjected to ongoing harassment by her supervisor over a two year period (April 1996 through August 1998).  The incidents she cites to support this allegation have been set forth in the **STATEMENT OF FACTS**.  Based on our complete review of the record, we find that Complainant has failed to establish a prima facie case of harassment based on her race and/or disabilities.

In order to establish harassment on the basis of her disabilities, Complainant first must show that she is a "qualified disabled person" within the meaning of the Rehabilitation Act.  We find that she has failed to do so.

A "disabled person" is defined as one who: (1) has a physical or mental impairment which substantially limits one or more of the person's major life activities; (2) has a record of such impairment; or (3) is regarded as having such impairment.  29 CFR §1614.203(a)(1).  With respect to her wrist injury, Complainant does not meet EEOC's "disabled person" standard.  There is no evidence to show that the injury rose to the level of a physical impairment which substantially limits one or more of her major life activities.  Complainant did not provide any medical documentation regarding the extent of her wrist injury.

Complainant's supervisor states that she was not aware that Complainant had any disabilities that would prohibit her from performing her duties as an accounting technician (IF Vol. 2,  Ex. 3, p. 3-1).  Complainant's second line supervisor says that although Complainant mentioned a wrist injury, she always insisted that it did not have any effect on her performing her assigned duties.  Nevertheless, he states that management purchased an ergonomic computer keyboard for Complainant and told her that if typing bothered her hand to perform other duties such as filing and processing mail (IF Vol. 2, Ex. 4, p. 4-1).

The Chief of FLETC's Employee and Labor Relations Branch states that Complainant has never requested a reasonable accommodation to perform her duties nor has she presented documented medical evidence of a disabling condition (IF Vol. 2, Ex. 10, p. 10-2).  The fact that management offered to modify Complainant's duties during those occasions when Complainant's wrist was bothering her is not proof that Complainant has a physical disability.  Management's consideration of Complainant's ailment and its attempt to assist her in discharging her assigned duties while she was experiencing physical discomfort does not equate to a perception on management's part of a qualified

disabling condition. <u>Kelly v. U.S. Postal Service</u>, 01830028, 1035/G6 (1983).

Based on the foregoing, we find that Complainant does not qualify as a "disabled person" with respect to her wrist injury, and thus cannot establish a prima facie case of disability discrimination on that basis.

With respect to Complainant's alleged mental disability (stress), the record contains insufficient information to establish that Complainant is a "disabled person." Complainant offered no evidence to show that she had been diagnosed with "stress" by a medical professional during this time period, or that she made management aware of her condition. Accordingly, Complainant is unable to establish a prima facie case of disability discrimination on the basis of stress.[3]

Complainant also alleges that she was harassed by management because of her race (Black). However, she has not offered any evidence to support this assertion. An essential element of a case of discriminatory harassment is that Complainant was subject to verbal or physical conduct relating to membership in a protected group. Complainant has not shown any relationship between management actions towards her and her race, and thus fails to establish a prima facie case of discriminatory harassment based on her race.

Even if we were to find that Complainant was disabled within the meaning of the Rehabilitation Act, she fails to establish that she was subjected to a hostile working environment. The Supreme Court has held that Title VII is violated when employees are required to work in a discriminatorily hostile or abusive environment; that is, an environment that is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment. <u>Meritor Savings Bank v. Vinson</u>, 477 U.S. 57 (1986). Whether an environment is "hostile" or "abusive" is determined by the totality of the circumstances. The EEOC has held that "unless the conduct is severe, a single incident or group of isolated incidents will not be regarded as discriminatory harassment." Complainant has not shown that the conduct complained of created a hostile or offensive working environment or unreasonably interfered with her work performance or adversely affected her employment opportunities. Indeed, the record shows that management: approved a cash award in 1998 for $100; rated Complainant fully satisfactory on her 1998 annual performance appraisal; instructed other employees to assist Complainant in performing her duties when her desk was backlogged; granted her requests for leave; provided physical therapy through the agency's athletic office; granted a request for outside employment; and purchased an ergonomic computer keyboard for Complainant and told her that if typing bothered her hand to perform other duties such as filing

---

[3] There was some evidence presented subsequent to the dates at issue here that Complainant was suffering from work-related stress. However, the neuropsychologist attributes Complainant's condition to her specific work environment and does not indicate that Complainant is substantially limited in the major life activity of working (IF Vol. 2, Ex. 2, p. 2-39 to 2-42) .

or processing mail (IF Vol. 1 Ex. 3, p. 3-2, 3-3, 3-4, 3-7). None of the above is probative of a hostile work environment.

**(2) Whether Complainant was subjected to harassment because of her disability (physical: wrist injury) when, on March 27, 1998, management allegedly recorded false information on Form CA-2, Notice of Occupational Disease and Claim for Compensation.**

This issue falls within the scope of Complainant's allegation that she was subjected to discriminatory harassment from August 1996 through August 1998. However, since this issue is based solely on Complainant's physical disability, and the Regional Complaint Center accepted it as a separate issue, we will analyze it separately. We previously determined that Complainant's wrist injury did not rise to the level of a disability. Therefore, Complainant is unable to establish a prima facie case of harassment on this issue.

**(3) Whether Complainant was denied reasonable accommodation for her disabilities (physical: wrist injury and mental: stress) when management allegedly denied her request to limit her assignment of duties.**

As previously established, Complainant has not shown that she had either a physical or mental disability within the meaning of the Rehabilitation Act. Therefore, management had no burden to provide Complainant with a reasonable accommodation. However, even if we found that Complainant did have a disability, she is unable to establish that she was denied a reasonable accommodation. Complainant's supervisor says that Complainant never made her aware that she needed any accommodations due to any physical (wrist injury) and mental (stress) disabilities during the time period at issue. The supervisor further notes that at no time during any meetings or conversations that Complainant had with her did she tell the supervisor that she was having difficulty in performing duties because of her alleged disabilities. In fact, on April 30, 1998, Complainant stated to her supervisor there was nothing management could do to accommodate her situation (IF Vol. 1 Ex. 3, p. 3-4). Complainant has not offered any evidence to support her claim that she requested any accommodation for her claimed disabilities.

Further, we note that management did make efforts to assist Complainant by providing physical therapy through the agency's athletic office, purchasing an ergonomic computer keyboard for Complainant, and advising her that if typing bothered her hand to perform other duties such as filing or processing mail (IF Vol. 1 Ex. 3, p. 3-2, 3-3, 3-4, 3-7).

Based on the foregoing, we find that Complainant has not shown that she was denied a reasonable accommodation.

**(4)  Whether Complainant was discriminated against based on her race (Black) when she was not selected for the position of Accounting Technician when two selections were made from the Voluntary Applicant File on March 3, 1998.**

**- Prima Facie Case -**

Complainant's race (African-American) places her in one of the protected classes.  Complainant applied and was found qualified for the vacancies. Complainant was not selected for the position vacancies.  Two non-Black applicants were selected.  Therefore, Complainant establishes a prima facie case of discrimination on this issue.

The burden now shifts to management to articulate a legitimate, nondiscriminatory reason for its action.

**- Management's Articulation -**

In 1998, two Accounting Technician vacancies were filled with applicants from the Voluntary Applicant File (VAF).  One was a permanent position and the other was a term position.  Complainant, who was one of the applicants considered from the VAF, had indicated that she would not accept a term position. Complainant's supervisor was the selecting official for the VAF selections.  The supervisor says that Complainant was not selected for the permanent Accounting Technician vacancy because she was not the most qualified candidate.  She states that all candidates were rated based on a series of interview questions asked by a three member interview panel.  The interview questions reflected knowledge, skills, abilities, work experience and other factors.  Based on information in their applications the candidates were given a score based on their education, awards and performance appraisals.  The supervisor says that she relied on the highest score for all factors considered in the selection process (IF Vol. 1 Ex. 3, p. 3-4).  The supervisor's comments are corroborated by a member of the interview panel, who says that he scored the two selectees higher than Complainant on the interview questions (IF Vol. 2 Ex. 6, p. 6-2).

Management has articulated a legitimate, nondiscriminatory reason for its action. Therefore, the burden now shifts back to Complainant to show that management's articulated reason was a pretext for discrimination.

**- Pretext -**

In nonselection cases, pretext may be found where Complainant's qualifications are demonstrably superior to the selectees'.  Bauer v. Bailar, 647 F. 2d 1037, 1048 (10th Cir. 1981).  However, Complainant has not shown that her qualifications were superior to the selectees.

Complainant alleges that she was better qualified for the position, was performing the duties of the position and had the equivalent amount of experience of the other applicants (IF Vol. 1 Ex. 2, p. 2-6). As discussed in management's articulation, Complainant's supervisor says that Complainant was not selected for the permanent Accounting Technician vacancy because she was not the most qualified candidate. She states that all candidates were rated based on a series of interview questions asked by a three member interview panel which reflected knowledge, skills, abilities, work experience and other factors. Based on information in their applications the candidates were given a score based on their education, awards and performance appraisals. The supervisor says that she chose the two applicants with the highest scores for all factors considered in the selection process (IF Vol. 1 Ex. 3, p. 3-4). The record does not support Complainant's assertion that her qualifications were superior to the selectees' qualifications.

### 99-1103

**Whether management discriminated against Complainant based on her race (Black), sex (female), and disabilities (mental: stress and physical: wrist injury) when, on November 10, 1998, Complainant's request for six months of administrative leave was denied.**

#### - Prima Facie Case -

To establish a prima facie case of race and sex discrimination, Complainant must show that: (1) she is a member of a protected group, and (2) she was treated differently by management than others similarly situated who were not of the Complainant's protected group. If there are no similarly situated employees, the Complainant must establish a causal relationship between her membership in the protected classes and the adverse action suffered. The record shows that Complainant is a member of protected groups by virtue of her race (Black) and sex (female). We previously determined that Complainant is not disabled by virtue of either her wrist injury or her stress. Complainant claims that two White, male, non-disabled employees of FLETC were given administrative leave for a year or more.

The EEOC holds that for other employees to be comparative employees they must be similarly situated in all relevant aspects of employment. Bosley v. U.S. Postal Service, EEOC Appeal No. 019932945 (1993) (citing Smith v. Monsanto Chemical Co., 770 F. 2d 719, 723 (8th Cir. 1985) and Sanhueza v. U.S. Postal Service, EEOC Appeal No. 01911109 (1991). Furthermore, for the purpose of inferring disparate treatment under Title VII, all relevant aspects of an employee's employment situation must be "nearly identical" to those of comparative employees. Payne v. Illinois Central R.R., 665 F. Supp. 1308, 1333 (W.D. Tenn. 1987). See, e.g., Mazella v. RCA Global Communications, Inc., 642 F. Supp.

1531, 1547 (S.D.N.Y. 1986), aff'd 814 F. 2d 653 (2d Cir. 1987) (citing Talley v. U.S. Postal Service, 33 Fair Empl. Prac. Cas. (BNA) 233, 238 (E.D. Mo. 1982), aff'd 720 F. 2d 505 (3d Cir. 1983), cert. denied, 446 U.S. 952 (1984) (to be considered "similarly situated," employees must have reported to the same supervisor and must have been subjected to the same performance evaluation standards). The two employees cited by Complainant worked in a different organizational unit and were placed on administrative leave pending Office of Inspector General investigations into conduct matters. Therefore, they are not similarly situated to Complainant for purposes of this analysis.

Absent a showing that similarly situated individuals were treated more favorably, Complainant must show a causal connection between her protected groups and management's action. Complainant has failed to offer any evidence to support a finding that the denial of administrative leave was based on her race, sex or disabilities.

Assuming, arguendo, that Complainant had established a prima facie case of discrimination with regard to this issue, the burden now shifts to management to articulate a legitimate, nondiscriminatory reason for its action.

**- Management's Articulation -**

The Chief of FLETC's Employee and Labor Relations Branch states that Complainant's request for six months of administrative leave was not granted because use of administrative leave for her situation would be inappropriate as determined by Comptroller General decisions. He says that no FLETC employee has ever been granted administrative leave for OWCP or personal illness. He states that the employees cited by Complainant as comparators were removed from the workplace for a period of time to allow for investigations by the Office of Inspector General concerning allegations of adverse conduct by the two employees (IF Vol. 2, Ex. 10, p. 10-2).

The record shows that no employee in the Budget and Finance Division was granted administrative leave for illness or injury between 1996 and 1998, and that the largest amount of administrative leave granted any employee was 40 hours (IF Vol. 2, Ex. 9, p. 9-2).

**- Pretext -**

Complainant offers no pretext arguments other than her mere assertion of discrimination. The only other evidence of discriminatory animus offered by the Complainant is the fact that two White, male employees were placed on administrative leave. For the reasons already discussed, this is not sufficient to show pretext.

## DECISION

It is the decision of the Department of the Treasury that a finding of no discrimination is appropriate in this matter.

## NOTICE OF APPEAL RIGHTS

If you are dissatisfied with this decision, you have the right to appeal to the Equal Employment Opportunity Commission (EEOC) or to file a civil action in an appropriate United States District Court.

All time periods are given in calendar days. If a time period expires on a Saturday, Sunday or Federal holiday, you may file on the next business day. If you are represented by an attorney, the time periods begin to run from the date your attorney receives this decision.

## FILING AN APPEAL WITH EEOC

You have the right to appeal this decision to the EEOC *within 30 days* of the day you receive this final agency decision. File your appeal by mail addressed to:

DIRECTOR, OFFICE OF FEDERAL OPERATIONS
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
P.O. BOX 19848
WASHINGTON, DC 20036

or by personal delivery or facsimile. At the same time you file an appeal with EEOC, you must also send a copy of your appeal to:

DIRECTOR
OFFICE OF EQUAL OPPORTUNITY PROGRAM
DEPARTMENT OF THE TREASURY
1500 PENNSYLVANIA AVE., N.W.
WASHINGTON, DC 20220
ATTN: MET SQUARE 6TH FLOOR
ROOM 6068

In your appeal to EEOC, you must state the date and method (for example, by certified mail or hand delivery) by which a copy of the appeal was sent to the Director of the Office of Equal Opportunity Program. You should use the attached EEOC Form 573, Notice of Appeal/Petition, to file your appeal. EEOC will dismiss your appeal if you do not file it within the time limits.

The original of any statement or brief in support of your appeal must be filed with EEOC, with a copy to the Director, Office of Equal Opportunity Program, *within 30 days* of the date you file your appeal.

**FILING A CIVIL ACTION**

You also have the right to file a civil action in an appropriate United States District Court *within 90 days* after you receive this final decision if you do not appeal to EEOC.

You may also file a civil action *after 180 days* from the date of filing an appeal with EEOC if there has been no final decision by EEOC.

If your claim is based on age discrimination, you should seek the advice of an attorney if you wish to file a civil action after expiration of the time limits noted above. The courts disagree about when a civil action must be filed and may permit an age discrimination complaint to be filed two years or more from the date of the alleged discrimination.

You must also comply with the following instructions:

(1) You must name **LAWRENCE H. SUMMERS, SECRETARY OF THE TREASURY** as the defendant. Failure to provide his name and official title may result in dismissal of your case.

(2) If you decide to file a civil action and if you do not have, or cannot afford, the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney does not extend the time in which to file a civil action. Both the request and the civil action must be filed within 90 days of the date you receive the agency or EEOC decision.

You may have to file a civil action *within 30 days*, not 90 days, after receiving this final agency decision or a decision from EEOC if the alleged discriminatory conduct that is the subject of your complaint occurred before November 21, 1991. To be sure your civil action is timely, you may wish to file within 30 days.



DEPARTMENT OF THE TREASURY
REGIONAL COMPLAINT CENTER
WASHINGTON

APR 0 4 2000

Ms. Angela C. Favors
103 Old Mill Trace, #11-B
Brunswick, GA  31525

Complaint of Angela C. Favors
and Lawrence H. Summers,
Secretary of the Treasury
TD Case Number:  00-1008M

Dear Ms. Favors:

This letter refers to the above referenced complaint of discrimination filed on October 2, 1999.

Based on further review of the formal complaint and the EEO Counseling Report, we have determined that the issue accepted for investigation in this complaint is appealable to the Merit Systems Protection Board (MSPB) and in any future correspondence should be referred to as 00-1008M.  The issue for investigation is:

> Whether management discriminated against Complainant based on her race (Black), sex (female) and disability (mental-stress and physical-wrist injury) and retaliation for previous involvement in the EEO process (filed previous formal EEO complaint) when Complainant's employment was terminated effective July 2, 1999.

Because the EEO complaint involves a matter which is also appealable to the MSPB, it is considered a mixed case complaint as defined in §1614.302(a).  The investigation of this complaint has been completed and you should receive  a copy of the Investigative File (IF) within the next two weeks.  You will also be furnished with a notice advising you that the Department of the Treasury will issue a final agency decision without an EEOC hearing.

After receiving the Department's final decision on the complaint, the complainant has the right to appeal it to the MSPB within 30 days of receipt of the decision or may file a civil action with the appropriate federal district court within 30 days of receipt of the decision.

-2-

You are advised that since the complaint is considered a mixed case complaint, if a final agency decision is not received from the Department within 120 days from the date the complaint was filed, the complainant has the right to file an appeal with the MSPB or file a civil action in federal district court.  These rights may be exercised at any time after the expiration of the 120 days and are further specified in 5 CFR §1201.154 and 29 CFR §1614.310.

If you have any further questions regarding the processing of your complaint, please contact Frederick R. Fischer, Senior EEO Specialist at (202) 377-6718.

Sincerely,

Michael Morgan-Gaide
Director