IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

BRUNSWICK DIVISION

FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.

2024 OCT 15  P 4: 25

CLERK_____
SO. DIST. OF GA.

| | | |
|---|---|---|
| ANGELA FAVORS-MORRELL | ) | CIVIL ACTIONS |
| TONY MORRELL, | ) | 200-158 |
| Plaintiffs, | ) | 2:09-CV-00058 |
| | ) | 2:11-CV-00091 |
| | ) | 2:14-CV-00164 |
| Vs | ) | 2:12 MC-00004 |
| | ) | 2:15-CV-00024 |
| UNITED STATES OF AMERICA, | ) | |
| Defendants. | ) | |
| | ) | |

PLAINTIFFS' REQUEST FOR HEARING

PLAINTIFFS' REQUEST TO REOPEN


COMES NOW Plaintiffs, Angela Favors-Morrell and Tony L. Morrell, pro-se in the above-styled actions and files this REQUEST FOR HEARING and REQUEST TO REOPEN. Judge Lisa Godbey Woods' co-conspirators are either deceased or retired: the late Senior United States District Judge Anthony A. Alaimo, the late United States Attorney Edward Tarver, and (the Plaintiff's supervisor) -the late Julie Martin of the United States Homeland Security Federal Law Enforcement Training Center; Director Connie Patrick, retired; and Attorney Martha F. Dekle disbarred.   In less than six months, the Plaintiff has experienced a miraculous move of God. Whereas a closed civil action 4:22-cv-00124-RSB-CLR was opened revealing the contents of a sealed blacked out document; and the FY 2009 OIG-10-73 was posted outlining only the information the Plaintiff required to file this petition.

The Report Distribution and the OIG-10-73 of the Department of Homeland Security Office of Inspector General Management Letters for the FLETC's FY 2009 Consolidated Financial Statements dated March 2010; clearly reflects the Department of Justice fought the Plaintiffs for more than 15 years and continued to adjudicated all of the above referenced actions while knowing that the defendant failed to disclose that the allegations of the Plaintiffs civil actions and TORT claims are confirmed and consistent with the finding of noncompliance as documented in the OIG's FLETC Performance and Accountability audits for Fiscal Years (FY) 2005, (FY)2006, (FY)2007, (FY)2009, as well as (FY)2014, (FY)2015 and (FY)2016 performed by KPMG, LLP under contract with the DHS Office of Inspector General;

Second, the Department of Justice continued to adjudicated all of the above referenced actions while knowing that the defendants had actual knowledge and concurred with the findings of the existence of the waste, fraud and abuse perpetrated by the Federal Law Enforcement-(FLETC) Management of the Budget and Finance Division, Chief Counsel David Brunjes, and former FLETC Directors Ralph Basham and Connie Patrick.

Third, the FY 2006, (FY)2007 and (FY)2009 of the KPMG OIG Federal Law Enforcement Training Center's Performance and Accountability Independent Auditors Reports reflect that the conditions identified in Civil Actions CV2:09-cv-00058 Favors-Morrell v United States were previously identified in the (FY2009) KPMG OIG Auditors Report prior to the Plaintiff filing her first TORT claim on May 13, 2009" which was dismissed by Judges Wood and Baker (LGW/RSB) on December 16, 2009.

Fourth, in the above styled actions, the Report Distribution of the OIG FLETC Performance and Accountability Audits clearly show that the Plaintiff//(Angela Favors Morrell) has been providing to the Defendants copies of "their" audits that they had previously received in KPMG LLP's communication to DHS, FLETC management, the Office of the Inspector General, the U.S. Office of Management and Budget, the U.S. Congress, and the Government Accountability Office.

Fifth, the Office of Inspector General Department of Homeland Security/(DHS) Federal Law Enforcement/(FLETC) Performance and Accountability Independent Auditors Reports that were previously removed from the internet have been reposted; along with the attached publication of the OIG-10-73 Department of Homeland Security Office of Inspector General Management Letters for the Federal Law Enforcement Training Center's FY 2009 Consolidated Financial Statements dated March 2010.

The OIG-10-73 publication Audit Report Distribution is identical as the Plaintiff's correspondence routing which included: Connie Patrick FLETC Director, the Honorable Napolitano, Secretary of the Department of Homeland Security, Congress Congressional Oversight and Appropriations Committees, Richard L. Skinner Inspector General; and John V. Kelly Deputy Inspector General.

Included in the OIG-10-73 publication are correspondence: (a) Richard L. Skinner, Inspector General, Preface dated March 29, 2010 – OIG Office of Inspector General U.S. Department of Homeland Security Washington, DC 20528; (b) Letter: KPMG LLP 2001 M Street, NW Washington, DC 20036, dated December 31, 2009 To: Inspector General U.S. Department of Homeland Security and Director Federal Law Enforcement Training Center; in Appendix C of the OIG-10-73:   (c)   February 25, 2010-   MEMORANDUM FOR: Anne L. Richards Assistant Inspector General for Audits DHS Office of Inspector General; (d) February 8, 2010-   MEMORANDUM FOR, Anne L. Richards Assistant Inspector General for Audits, DHS Office of Inspector General;   VIA: Connie L. Patrick – Director FROM: Alan L. Titus Assistant Director & Chief Financial Officer Directorate. Citing: Section 5.15 specifically implies that the audit team detected fraud and illegal acts while performing test work on delinquent receivables. FLETC is unaware of any discussions on fraud or illegal acts with the audit team. As asserted in the FLETC FY 2009 Management Representation Letter, FLETC has no knowledge of any fraud or suspected fraud involving management or employees.   If

you need additional information concerning this matter please contact Julie Martin, Deputy CFO at (912)267-2400.

Reference the above response by Alan L. Titus Assistant Director & Chief Finance Officer Directorate concerning fraud and illegal acts detected by the auditors; more than 27 years ago, the Plaintiff/Angela Favors-Morrell informed FLETC's Director, her supervisor Julie Martin, Alan Titus, Denis Staten, the EEO Director and others reference the illegal acts that occurred daily within the Budget and Fiancé Division.

The Plaintiff has argued that the Performance and Accountability Reports cited the Budget and Finance Division non-compliance as referenced in the Whistle Blower letter/complaints. Most off, letters from FLETC's management reflected that the there was nothing wrong with the Plaintiff's job performance; she was instead harassed and endure a hostile work environment after making protected disclosures about the wrongdoing under the whistleblower law and refusing to violate Federal and Accounting Rules and Regulations.

April 14, 1997 the Plaintiff filed the first Whistle Blower complaint at FLETC to Director Charles Rankivich, cc: FLETC EEOC. – Reporting Waste Fraud and Abuse whereas FLETC's vendors were over billed and not receiving discounts. The Budget and Finance Division was not following Standard operating procedures, inconsistent training and review, and BFD had a preferred way of assigning invoice numbers.

On May 14, 1998 the Plaintiff filed the second Whistle Blower complaint/letter to FLETC Chief Counsel David Brunjes, cc: FLETC Director Connie Patrick. The Plaintiff reported that FLETC Budget and Finance was not compliance with Federal Accounting Rules and Regulations that include violations of FFMIA and the Prompt Payment Act; Budget and Finance had a preferred system. Attorney Brunjes destroyed the letter and informed the Plaintiff that there would not be a follow-up.

Moreover, KPMG's Fiscal Years 2006 and 2007 OIG Federal Law Enforcement Training Center's Performance and Accountability Independent Auditors Reports findings confirmed the allegations of my EEO Complaint TD98-1403 and Civil Action 200-158 that was filed May 25, 2002.   During the Pretrial Hearing the late Senior Judge Anthony A. Alaimo referred to the Plaintiff as a useless N* gger. The court reporter typed useless --- --- and certified this transcript as true and accurate; Judge Wood states that she doubts that Judge Alaimo apologized. However, she has NEVER doubted that Judge Alaimo used the racial epithet "Useless N gger" during the pretrial hearing.

Thus, the judicial decisions of the Judge Lisa Godbey Wood reflects that the Department of Justice United States Attorney, the Assistant United States Attorneys and FLETC Chief Counsel David Brunjes (the defendants) all have agreed in concert/together that the above referenced allegations were previously adjudicated and dismissed in the civil action CV200-158 by the late Senior Judge Anthony A. Alaimo. However, at this time the Plaintiff has not received nor located Judge Alaimo's decision and/or signed order granting summary judgement reference the merits of the TORT claims and Whistle Blower filed by the Plaintiff.

Although the Plaintiff has never filed on "termination from employment;" sections 8 and 10 of the STANDARD FORM 95 Claim for Damage, does not reflect "Termination" as the Basis of the TORT Claim; Judge Wood along with her deceased co-conspirators have all agreed to an action that has never occurred. -- In her Decisions, Judge Wood states:

In Favors-Morrell v. UNITED STATES OF AMERICA, Civil Action 2:09-cv-00058 -lgw-rsb,-Document 78 (S.D. Ga. 1/24/2017) Judge Wood states:   Plaintiff's twenty-third post-judgment effort to revive her claims, first dismissed nearly fifteen years ago by Judge Anthony A. Alaimo. See Case No. 2:00cvl58. Her original action, filed in the year 2000, complained of her July 2, 1999 termination from the Federal Law Enforcement Training Center.   Seven years later, on May 13, 2009, she filed her second lawsuit based on the same termination Case No. 2:09cv58; Two years later, on June 6, 2011, she filed her third lawsuit based on the same termination, Case No.2:llcv91.   After all of these suits were dismissed and all appeals lost. Plaintiff began a prolific campaign of post-dismissal motions.

Judge Wood repeats the false statements in cv2:11-cv-091-LGW-RSB, Document 15: The third time will not be a charm for the plaintiff.   The present lawsuit is her third federal lawsuit in which she attempts to challenge her July 2, 1999 termination.... Seven years later, on May 13, 2009, she filed her second lawsuit based on that same termination.

Judge Wood (lgw-rsb) along with Judge R. Stan Baker dismissed the above styled actions based on factors not related to the merits and the evidence; and has denied all of the Plaintiffs requests for hearings.

In spite of Judges Lisa Godbey Wood and R. Stan Baker's pattern of willful" misrepresentations and omissions of facts in all rulings of the civil actions that the Plaintiff has filed in the US District Court. Chief Judge R. Stan Baker sanctioned Chatham County District Attorney Shalena Cook Jones, Esq. Case 4:22-cv-00124-RSB-CLR Filed 10/26/23.   He stated that he made the extraordinary decision after a pattern of "willful" misrepresentations and omissions of fact by Cook Jones.   He intended to act in a way that would prevent others from acting as egregiously as Cook Jones.

As previously stated, AND, Judge Wood cannot produce the civil actions to support her deceitful decisions, Therefore, the Plaintiff request that Chief Judge R. Stan Baker act in a way that would prevent others from acting as egregiously as he and the Honorable Judge Wood.

Fraud Upon the Court is where the Judge (who is NOT the "Court") does NOT support or uphold the Judicial Machinery of the Court. Having judges who are violating their oath of office is Fraud upon the Court which immediately removes jurisdiction from that Court, and vitiates (makes ineffective - invalidates) every decision from that point on and EVERY case which has had fraud involved can be re-opened AT ANY TIME, because there is no statutes of limitations on fraud. A judge is an officer of the court, as well as are all attorneys. A judge is not the court. People v. Zajic, 88 Ill.App.3d 477, 410 N.E.2d 626 (1980).

Most of all, Conspiracy or concerted-action liability in the civil law imposes a form of vicarious liability whereby "all persons" who actively participate in the wrongful act, by cooperation or request, or who lend aid, encouragement or countenance to the wrongdoer, or approval to his acts done for their benefit, are equally liable.

The following:   **Appendix A of the OIG-10-73: Report Distribution listed below clearly reflects that the Department of Justice continued to adjudicated all of the above referenced actions while knowing that the defendants had actual knowledge and concurred with the findings of the existence of the waste, fraud and abuse perpetrated.**

**Department of Homeland Security**
Secretary
Deputy Secretary
Chief of Staff
Deputy Chiefs of Staff
General Counsel
Executive Secretariat
Director, GAO/OIG Liaison Office
Assistant Secretary for Office of Policy
Assistant Secretary for Office of Public Affairs
Assistant Secretary for Office of Legislative Affairs
Chief Financial Officer
Chief Information Officer

**Federal Law Enforcement Training Center**
Director, Chief Financial Officer, Chief Information Officer

**Office of Management and Budget**
Chief, Homeland Security Branch, DHS OIG Budget Examiner

**Congress**
Congressional Oversight and Appropriations Committees, as appropriate

Respectively Submitted,
Angela Favors-Morrell, Plaintiff pro se
Tony L. Morrell

I certify that a copy of this demand for documents has been mailed to the United States Attorney Jill E. Steinberg @ 22 Barnard Street, Suite 300 Savannah, Georgia 31401.

Areatha Bowers-Morrell

October 15, 2024

# Department of Homeland Security
## Office of Inspector General

Management Letter for the
Federal Law Enforcement Training Center's FY 2009
Consolidated Financial Statements



*Office of Inspector General*

U.S. Department of Homeland Security
Washington, DC 20528


# Homeland Security

MAR 2 9 2010

## Preface

The Department of Homeland Security (DHS) Office of Inspector General (OIG) was established by the *Homeland Security Act of 2002* (Public Law 107-296) by amendment to the *Inspector General Act of 1978*. This is one of a series of audit, inspection, and special reports prepared as part of our oversight responsibilities to promote economy, efficiency, and effectiveness within the department.

This draft report presents the management letter for the Federal Law Enforcement Training Center's (FLETC) fiscal year (FY) 2009 consolidated financial statement audit. It contains observations and recommendations related to internal controls that did not reach the level of materiality to be reported in the financial statement report. Other internal control deficiencies which are considered significant or material were reported, as required, in KPMG LLP's (KPMG) Independent Auditors' Report, dated December 31, 2009. KPMG performed the audit and is responsible for the attached letter and the conclusions expressed in it. We do not express opinions on FLETC's consolidated financial statements, or conclusions on compliance with laws and regulations.

The recommendations herein have been discussed in draft with those responsible for implementation. We trust this report will result in more effective, efficient, and economical operations. We express our appreciation to all of those who contributed to the preparation of this report.

*Richard L. Skinner*

Richard L. Skinner
Inspector General



KPMG LLP
2001 M Street, NW
Washington, DC 20036


December 31, 2009


Inspector General
U.S. Department of Homeland Security

Director
Federal Law Enforcement Training Center

Ladies and Gentlemen:

We have audited the consolidated balance sheets of the U.S. Department of Homeland Security's (DHS) Federal Law Enforcement Training Center (FLETC) as of September 30, 2009 and 2008, and the related consolidated statements of net cost and changes in net position, and combined statements of budgetary resources (hereinafter referred to as "consolidated financial statements") for the years then ended.  In planning and performing our audit of the financial statements of FLETC, in accordance with auditing standards generally accepted in the United States of America, we considered FLETC's internal control over financial reporting (internal control) as a basis for designing our auditing procedures for the purpose of expressing our opinion on the consolidated financial statements but not for the purpose of expressing an opinion on the effectiveness of FLETC's internal control. Accordingly, we do not express an opinion on the effectiveness of FLETC's internal control.  In connection with our fiscal year 2009 audit, we also tested FLETC's compliance with certain provisions of applicable laws, regulations, and contracts that could have a direct and material effect on these consolidated financial statements.

During our audit we noted certain matters involving internal control and other operational matters that are summarized on page one in the Table of Financial Management Comments, and presented for your consideration. These comments and recommendations, all of which have been discussed with the appropriate members of management, are intended to improve internal control or result in other operating efficiencies.   These comments are in addition to the significant deficiencies and material weaknesses presented in our *Independent Auditors' Report*, dated December 31, 2009, included in the FY 2009 FLETC *Agency Financial Report.* A description of each internal control finding, and its disposition, as either a significant deficiency or a financial management comment is provided in Appendix A.  Our findings related to information technology general and security controls have been presented in a separate letter to the Office of Inspector General and the DHS Chief Information Officer dated December 31, 2009.

We would be pleased to discuss these comments and recommendations with you at any time.

FLETC's written response to our comments and recommendations has not been subjected to the auditing procedures applied in the audit of the consolidated financial statements and, accordingly, we express no opinion on it.



This communication is intended solely for the information and use of DHS and FLETC management, the Office of the Inspector General, the U.S. Office of Management and Budget, the U.S. Congress, and the Government Accountability Office, and is not intended to be and should not be used by anyone other than these specified parties.

Very truly yours,

KPMG LLP

U.S. Department of Homeland Security
Federal Law Enforcement Training Center
*Table of Financial Management Comments*
September 30, 2009

## TABLE OF FINANCIAL MANAGEMENT COMMENTS (FMC)

| Comment Reference | Subject | Page(s) |
|---|---|---|
| FMC-09-01 | Contract Review Process Needs Improvement | 2 |
| FMC-09-02 | Budgetary Controls Over Upward/Downward Adjustments | 3-4 |
| FMC-09-03 | Management Review of Charge Cards | 4-5 |
| FMC-09-04 | Capital Leases | 5-6 |

## APPENDICES

| Appendix | Subject | Page(s) |
|---|---|---|
| A | Crosswalk – NFRs to Disposition in Independent Auditors' Report or Management Letter | 7-8 |
| B | Status of Prior Year Findings | 9 |
| C | Management Response | 10-11 |

U.S. Department of Homeland Security
Federal Law Enforcement Training Center
*Financial Management Comments*
September 30, 2009

**FMC 09-01 – Contract Review Process Needs Improvement**

*Conditions:*

KPMG selected a statistical sample of 67 expense transactions for the period of October 1, 2008 through June 30, 2009 and obtained the related contract/purchase orders issued by the procurement division.  We inspected the documentation supporting each sample to determine whether the contract/purchase order was subjected to the appropriate review prior to issuance and noted the following:

- five instances where the contracts were between $100,000 and $500,000, and were not signed by a branch chief.
- one instance where the contract exceeded $500,000, and was not signed by a branch chief and/or the legal division.

For the period October 1, 2008 through September 30, 2009, KPMG selected a statistical sample of 201 expense transactions and obtained the related contract/purchase orders issued by the procurement division.  We inspected the documentation supporting each sample to determine whether the contract /purchase order was subjected to the appropriate review prior to issuance and noted the following:

- one instance where the contract was between $100,000 and $500,000, and was not signed by a branch chief.
- four instances where the contract exceeded $500,000, and was not signed by a branch chief and/or the legal division.

*Recommendations:*

We recommend that FLETC:

1. Improve its policies and procedures over the contract management process to ensure the proper reviews are completed prior to issuance of a contract.
2. Provide additional training to appropriate personnel to ensure the proper reviews are completed prior to issuance of a contract.
3. As part of FLETC's internal review procedures, contracts should be selected at random throughout the year to ensure that all contracts are receiving the proper level of review.

U.S. Department of Homeland Security
Federal Law Enforcement Training Center
*Financial Management Comments*
September 30, 2009

**FMC 09-02 – Budgetary Controls over Upward/Downward Adjustments**

*Conditions:*

In performing procedures over Standard General Ledger (SGL) 4972 – *Downward Adjustments of Prior-Year Paid Delivered Orders - Obligations, Refunds Collected* and SGL 4982 - *Upward Adjustments of Prior-Year Delivered Orders - Obligations, Paid*, KPMG noted that there was netting activity included in the populations, related to payroll accruals and reversals, which did not represent valid upward and downward adjustments. As such, FLETC performed an analysis to determine what transactions (netting activity) needed to be removed. Upon completion of the analysis, FLETC posted an adjustment for approximately $5.6 million and $6.1 million to SGLs 4972 and 4982, respectively. However, we noted that FLETC erroneously posted the adjustment to move the amounts from SGLs 4972 to 4971 – *Downward Adjustments of Prior-Year Unpaid Delivered Orders – Obligations, Recoveries* and from 4982 to 4981 - *Upward Adjustments of Prior-Year Delivered Orders – Obligations, Unpaid*. After additional inquiries, FLETC posted a correcting entry to reverse a portion of the previously posted entries to correct the amounts erroneously posted to SGL 4971 and 4981.

In addition, while performing test work procedures over SGL 4871 - *Downward Adjustments of Prior-Year Unpaid Undelivered Orders -Obligations, Recoveries* sample items, which were statistically selected as of June 30, 2009, KPMG noted one exception where the transaction did not represent a valid downward adjustment (sample C1). We also noted two items (samples B1, partial error, and C2), which were not de-obligated in a timely manner, resulting in downward adjustments in FY 2009 rather than a prior fiscal year. The dollar amount of these items was approximately $169,000 and $58,000, respectively.

In performing test work procedures over SGL 4871 - *Downward Adjustments of Prior-Year Unpaid Undelivered Orders -Obligations, Recoveries* sample items, which were statistically selected as of September 30, 2009 for the entire year (10/1/08 through 9/30/09), KPMG noted eight exceptions where the de-obligation was not completed in a timely manner, resulting in a downward adjustment in FY 2009 rather than a prior fiscal year.

*Recommendations:*

We recommend that FLETC:

1. Implement and perform a comprehensive review process in order to ensure that all activity represents valid upward or downward adjustments.
2. Develop a formal review process in which undelivered order balances are reviewed for accuracy and validity at least semi-annually and ensure that the review is adequately documented. As part of this formal review, include the performance end date field in

U.S. Department of Homeland Security
Federal Law Enforcement Training Center
*Financial Management Comments*
September 30, 2009

Momentum to better identify those contracts which are approaching the end of their period of performance and/or have passed the end of the period of performance.

## FMC 09-03 – Management Review of Charge Card Statements

*Conditions:*

To test the control over management review of monthly charge card statements, KPMG selected a sample of five cardholders, and examined nine months of purchase card statements for each cardholder for a total sample of 45 charge card statements. The results of testing are as follows:

Cardholder A:

- one instance where the statement was not signed by cardholder or supervisor.

Cardholder B:

- seven instances where the statement was not signed by the cardholder or supervisor.
- two instances where the statement was signed by both cardholder and supervisor, but the supervisor's signatures were not dated, leading to the determination of an untimely approval exception.

Cardholder C:

- two instances where the statement was not signed by the cardholder or supervisor.
- one instance where the statement was signed by both cardholder and supervisor, but the supervisor's approval date was not within the 14 day criteria, leading to the determination of an untimely approval exception.

Cardholder D:

- six instances where the statement was signed by both cardholder and supervisor, but the supervisor's signatures were not dated, leading to the determination of an untimely approval exception.

Cardholder E:

- two instances where the statement was not signed by the cardholder or supervisor.
- one instance where the statement was signed by both cardholder and supervisor, but the supervisor's approval date was not within the 14 day criteria, leading to the determination of an untimely approval exception.

U.S. Department of Homeland Security
Federal Law Enforcement Training Center
*Financial Management Comments*
September 30, 2009

- one instance where the statement was not signed by the cardholder and the supervisor's approval was not dated, leading to the determination of an untimely approval exception.

KPMG also selected a statistical sample of credit card expenses for the period October 1, 2008 through September 30, 2009, and noted the following:

- one instance (sample #1) where the transaction was not coded to the correct fund. We noted that this transaction was related to minor construction, which is Minor Construction Maintenance (fund code MCM). However, it was incorrectly coded to Operating Expenses (fund code SE).

*Recommendations:*

We recommend that as part of FLETC's internal audit procedures, purchase card statements should be selected at random throughout the year to ensure that all statements are being reviewed properly, and that they are being coded to the proper fund.

**FMC 09-04 – Capital Leases**

*Conditions:*

Furniture that was supplied by the lessor should have been included in the FMV calculation. As management did not include this in their analysis, KPMG performed an analysis to include the furniture in the calculations. Firstly, property, plant and equipment and the capital lease liability should be increased by $6.6 million, which represents $2.2 million for each of the three leases, as shown by the following entry:

| | | |
|---|---|---|
| Debit Property, Plant and Equipment | $6,600,000 | |
| Credit Capital Lease liability | | $6,600,000 |

Then a proposed entry is needed to account for the depreciation of this furniture. The following is the proposed entry:

| | | |
|---|---|---|
| Debit Depreciation expense | $330,000 | |
| Debit Cumulative Results of Operations | $1,980,000 | |
| Credit Accumulated Depreciation | | $2,310,000 |

Secondly, the discount rate (i.e. FLETC's incremental borrowing rate) should be the interpolated average of the nominal Treasury interest rates for 10-year and 30-year Treasury bills for calendar year 2001 (building #1) and 2002 (building #2 and #3). The interest rate for building #1 should be 5.35% and the rate for building #2 and #3 would be 5.45%. This causes a change to the approximate amount that should be capitalized for each lease as follows:

5

U.S. Department of Homeland Security
Federal Law Enforcement Training Center
*Financial Management Comments*
September 30, 2009

|  | Building 1 | Building 2 | Building 3 |
|---|---|---|---|
| Amount recorded in FY 2006 | $22,727,000 | $21,871,000 | $23,566,000 |
| Amount to record based on rate | $21,155,000 | $20,611,000 | $21,629,000 |

Since the fair market value of the building has decreased, the liability and property, plant and equipment is overstated. Therefore, the following proposed entry is needed:

Debit Capital Lease liability      $4,700,000
      Credit Property, Plant and Equipment          $4,700,000

Then a proposed entry is needed to account for the depreciation relating to this reduction in property, plant and equipment. The following is the proposed entry:

Debit Accumulated Depreciation          $1,645,000
      Credit Depreciation expense          $235,000
      Credit Cumulative Results of Operations $1,410,000

Finally, the Capital Lease liability is overstated due to the amortization of these adjustments. The following is the proposed adjustment:
Debit Capital Lease Liability      $926,000
      Credit Interest expense          $141,000
      Credit Cumulative Results of Operations $785,000

*Recommendations:*

We recommend FLETC perform the following:

1. Improve the process to document the evaluation of the criteria determining whether leases should be classified as capital or operating leases and require a supervisor to agree the evaluations to the supporting documentation and to approve the evaluations.
2. Ensure that all aspects of the lease arrangement have been taken into consideration.
3. Provide additional guidance and training to personnel on the process of identifying whether leases should be classified as capital or operating leases and on preparing the future minimum lease payment schedule consistent with known technical literature.

Appendix A

U.S. Department of Homeland Security
Federal Law Enforcement Training Center
*Crosswalk* - NFRs to Disposition in Independent Auditors' Report or Management Letter
September 30, 2009

| Component | NFR No. | Description | Disposition[i] | | | | |
| | | | IAR[ii] | | | FMC | |
| | | | MW | SD | NC | Page(s) | No. |
| FLETC | 09-16 | Contract Review Process Needs Improvement | | | | 2 | 09-01 |
| FLETC | 09-20 | FFMIA | | | * | | |
| FLETC | 09-23 | Untimely Capitalization of PP&E | A | | | | |
| FLETC | 09-26 | FMFIA | | | ** | | |
| FLETC | 09-27 | Budgetary Controls Over Upward/Downward Adjustments | | | | 3-4 | 09-02 |
| FLETC | 09-28 | Improper Expensing and Capitalization of CIP & PP&E Costs | A | | | | |
| FLETC | 09-29 | Management Review of the Billing Process | | C | | | |
| FLETC | 09-30 | Management Review of Charge Card Statements | | | | 4-5 | 09-03 |
| FLETC | 09-31 | Accounts Payable Estimation Methodology | | D | | | |
| FLETC | 09-32 | Untimely Referral of Receivables to Treasury (*Debt Collection Improvement Act of 1996*) | | | *** | | |
| FLETC | 09-33 | Budgetary Controls Over Upward/Downward Adjustments – Untimely De-obligations | | | | 3-4 | 09-02 |
| FLETC | 09-34 | Controls over Financial Reporting | A | | | | |
| FLETC | 09-35 | Capital Leases | | | | 5-6 | 09-04 |

\* FFMIA non-compliance has been considered and reported at the DHS consolidated level

\*\* FMFIA non-compliance has been considered and reported at the DHS consolidated level

\*\*\* Per Government Auditing Standards, section 5.10, fraud and illegal acts that have an inconsequential effect on the financial statements are not required to be included in the independent auditors' report.

7

<sup>i</sup> Disposition Legend:
IAR     Independent Auditors' Report
FMC     Financial Management Comment
MW      Material Weakness
SD      Significant Deficiency
NC      Noncompliance with laws, regulations, and contracts as reported in the IAR

<sup>ii</sup> The following links to the applicable sections of the IAR:
A       Financial Reporting
B       Information Technology General and Security Controls
C       Controls over the Revenue Process
D       Controls over the Accounts Payable Estimation Methodology

Appendix B

U.S. Department of Homeland Security
Federal Law Enforcement Training Center
*Status of Prior Year Findings*
September 30, 2009

| | | | Disposition | |
|---|---|---|---|---|
| Component | NFR No. | Description | Closed | Repeat (FY 2009 NFR No.) |
| FLETC | 08-01 | The Process to Identify and Record Environmental Liabilities Needs to be Improved. | | 09-34 |
| FLETC | 08-04 | Unrecorded Liabilities Exist as of 9/30/09 | X | |
| FLETC | 08-13 | Capital Lease Liability | X | |
| FLETC | 08-16 | Contract Review Process Needs Improvement | | 09-16 |
| FLETC | 08-20 | FFMIA non-compliance | | 09-20 |
| FLETC | 08-21 | Unbilled Reimbursable Revenue | X | |
| FLETC | 08-22 | Journal Voucher Weaknesses | X | |
| FLETC | 08-23 | Weaknesses Related to CIP | | 09-23 |
| FLETC | 08-24 | Aged Federal Receivables – Untimely Collection | X | |
| FLETC | 08-25 | Fixed Assets not Depreciated | X | |
| FLETC | 08-26 | FMFIA | | 09-26 |
| FLETC | 08-27 | Completeness of Unfilled Customer Orders | X | |

Appendix C

U.S. Department of Homeland Security
Federal Law Enforcement Training Center
*Management Response to The Draft Management Letter*
September 30, 2009

Federal Law Enforcement Training Center
U.S. Department of Homeland Security
1131 Chapel Crossing Road
Glynco, Georgia 31524

 Homeland
Security

February 25, 2010

MEMORANDUM FOR:     Anne L. Richards
                    Assistant Inspector General for Audits
                    DHS Office of Inspector General

FROM:               Alan L. Titus
                    Chief Financial Officer

SUBJECT:            Comments on the *Draft Report: Management Letter for the*
                    *Federal Law Enforcement Training Center's FY 2009*
                    *Consolidated Financial Statements -- FOUO*
                    Reference our Letter of February 8, 2010

The Federal Law Enforcement Training Center (FLETC) provided our comments on the draft
management letter on February 8, 2010.  However, we did not state our concurrence on the
findings and recommendations on all of the items identified in the report.  We do concur on all of
the findings with the exception of FLETC NFR No. 09-32.  We explained our position on that
NFR in our February 8th letter.

If you need additional information concerning this matter please contact Julie Martin, Deputy
CFO at (912)267-2400.

www.fletc.gov

10

Federal Law Enforcement Training Center
U. S. Department of Homeland Security
1131 Chapel Crossing Road
Glynco, Georgia 31524



## Homeland Security

February 8, 2010

| | |
|---|---|
| MEMORANDUM FOR: | Anne L. Richards<br>Assistant Inspector General for Audits<br>DHS Office of Inspector General |
| VIA: | Connie L. Patrick<br>Director |
| FROM: | Alan L. Titus<br>Assistant Director<br>Chief Financial Officer Directorate |
| SUBJECT: | Comments on the *Draft Report: Management Letter for the Federal Law Enforcement Training Center's FY 2009 Consolidated Financial Statements – FOUO* |

The Federal Law Enforcement Training Center (FLETC) appreciates the opportunity to comment on the draft management letter.

In Appendix A of the draft management letter, we recommend citing Government Auditing Standards Section 5.10 (*Reporting Deficiencies in Internal Control, Fraud, Illegal Acts, Violations of Provisions of Contracts or Grant agreements, and Abuse*) vice Section 5.15 (*Fraud, Illegal Acts, Violations of Contracts or Grant Agreements, and Abuse*) for FLETC NFR No. 09-32 (*Untimely Referral of Receivables to Treasury (DCIA)*) as the basis for not including the NFR in the independent auditors' reports due to the inconsequentiality of non-compliance with the Debt Collection Improvement Act.

Citing Section 5.15 specifically implies that the audit team detected fraud and illegal acts while performing test work on delinquent receivables. FLETC is unaware of any discussions on fraud or illegal acts with the audit team. As asserted in the FLETC FY 2009 Management Representation Letter, FLETC has no knowledge of any fraud or suspected fraud involving management or employees.

If you need additional information concerning this matter please contact Julie Martin, Deputy CFO at (912)267-2400.

www.fletc.gov

11

**Appendix A**
**Report Distribution**

### Department of Homeland Security

Secretary
Deputy Secretary
Chief of Staff
Deputy Chiefs of Staff
General Counsel
Executive Secretariat
Director, GAO/OIG Liaison Office
Assistant Secretary for Office of Policy
Assistant Secretary for Office of Public Affairs
Assistant Secretary for Office of Legislative Affairs
Chief Financial Officer
Chief Information Officer

### Federal Law Enforcement Training Center

Director
Chief Financial Officer
Chief Information Officer

### Office of Management and Budget

Chief, Homeland Security Branch
DHS OIG Budget Examiner

### Congress

Congressional Oversight and Appropriations Committees, as
appropriate



ADDITIONAL INFORMATION AND COPIES

To obtain additional copies of this report, please call the Office of Inspector General (OIG) at (202) 254-4100, fax your request to (202) 254-4305, or visit the OIG web site at www.dhs.gov/oig.

OIG HOTLINE

To report alleged fraud, waste, abuse or mismanagement, or any other kind of criminal or noncriminal misconduct relative to department programs or operations:

• Call our Hotline at 1-800-323-8603;

• Fax the complaint directly to us at (202) 254-4292;

• Email us at DHSOIGHOTLINE@dhs.gov; or

• Write to us at:
    DHS Office of Inspector General/MAIL STOP 2600,
    Attention: Office of Investigations - Hotline,
    245 Murray Drive, SW, Building 410,
    Washington, DC 20528.

The OIG seeks to protect the identity of each writer and caller.

